UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-CV-22722 - HUCK/O'SULLIVAN

---

EUSEBIA CARDENAS,
FRANCISCO A. MORENO, and
all others similarly situated under
29 U.S.C. 216(B),

Plaintiffs,

v.

ARAGON TOWERS CONDOMINIUM
ASSOCIATION, INC., RAUL
INTRIAGO, and JOHN GONZALEZ,

Defendants.

---

**DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW**

---

Defendants, Aragon Towers Condominium Association, Inc., Raul Intriago and John Gonzalez (hereinafter the "Defendants"), by and through undersigned counsel, hereby file this their Motion for Final Summary Judgment with Incorporated Memorandum of Law as to all claims raised in Plaintiffs' Complaint and, in support thereof, state as follows:

## BACKGROUND

Defendant Aragon Towers Condominium Association, Inc. is the Florida not-for-profit corporation created to operate the Aragon Towers Condominium, a 98 unit condominium located in Miami, Florida. Defendant Raul Intriago was the Association President from mid 2007 through January 2011. Defendant John Gonzalez was an Association Director from mid 2007 through January 2011.

In December 2006, the Association entered into an Employment Agreement with the Plaintiffs. The agreement specified a duration of three years, and ended on December 31, 2009. See paragraph number three (3) on page two (2) of the Employment Agreement, attached hereto as Exhibit "1" and incorporated by reference.

Plaintiffs filed the instant action alleging violation of the Fair Labor Standards Act, 29 U.S.C. 201-216, for alleged minimum wage and overtime violations.

## SUMMARY JUDGMENT STANDARD

Pursuant to Federal Tule of Civil Procedure 56(c), a motion for summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no general issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986).

The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.E.2d 142 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.E.2d 202 (1986). Consequently, the non-moving party cannot simply "rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id.* If the non-moving party simply presents evidence that "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Id.* at 249-250.

**MEMORANDUM OF LAW**

"Under FLSA, an employer is required to pay overtime compensation if the employee can establish enterprise coverage1 or individual coverage." *Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264, 1265-66 (11th Cir. 2006). The burden of establishing coverage under individual coverage or enterprise coverage is on the Plaintiff. *Id. See also Kitchings v. Florida United Methodist Children's Home, Inc.*, 393 F.Supp.2d 1282 (M.D. Fla. 2005).

**Individual Coverage**

In order to establish individual coverage under the FLSA, an employee must show that he was (1) engaged in commerce or (2) engaged in the production of goods for commerce. 29 U.S.C. § 207(A)(1). "An employee is engaged in commerce if he is engaged in activities that constitute interstate commerce, not merely affect it." *Thompson v. Robinson, Inc.*, 2007 WL 2714091, (M.D. Fla. 2007). When determining individual coverage, the character of the employee's activities is determinative, not the nature of the employer's business. *Overstreet v. N. Shore Corp.*, 318 U.S. 494, 498 (1943). The test, therefore, is "whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Id.* The application of this test to a FLSA claim is essentially a "line drawing exercise." *Jimenez v. S. Parking, Inc.*, 07-23156-CIV, 2008 WL 4279618 at *7 (S.D. Fla. 2008) (*citing Alonso v. Garcia*, 147 Fed.Appx. 815, 816 (11th Cir.2005)).

In *Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264 (11 th Cir. 2006), the Eleventh

Circuit reasoned that the employee "must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) Id. "Goods cease to move in interstate commerce once they reach the customer for whom they are intended." Id. (citing Thorne, 448 F.3d at 1267). Thus, an employer who "purchases goods that previously moved in interstate commerce for intrastate use" or an employee who "engage[s] in any further intrastate movement of the goods [is] not covered under the Act." *Thompson v. Robinson, Inc.*, 2007 WL 2714091, at *3 (M.D. Fla. 2007).

The facts of the case at bar are analogous to the facts in *Lenca v. Laran Enterprises, Inc.*, 388 F.Supp. 782 (N.D. Ill. 1974), in which a janitor's work was held to have too insubstantial an effect on commerce to be individually covered under the FLSA. The court held:

> A review of cases indicates that a residential or commercial janitor's work does not substantially affect interstate commerce. In their memoranda plaintiffs cite many factors in an attempt to show plaintiffs' influence on interstate commerce; i.e., use of supplies such as cleaning compounds, light bulbs, plumbing repair parts which traveled in interstate commerce; use of the telephone in speaking with prospective tenants from out of state; delivery of tenant's mail, etc. However, none of these activities is of such character to have any significant impact on interstate commerce. Plaintiffs are simply not engaged in the 'production of goods for commerce" as that phrase has heretofore been interpreted.

*Id.* at 784-785.

Plaintiffs' work in the case at bar had even less of an impact on interstate commerce as the

Plaintiffs in *Lenca*. In the instant case, Plaintiffs performed the same type of janitorial and maintenance work as that performed in *Lenca*, with the exception of speaking on the telephone to individuals out of state or delivering tenants' mail, which the instant Plaintiffs did not do. *See generally* Transcript of the Deposition of Eusebia Cardenas ("Cardenas Depo"), a copy of which is attached hereto as Exhibit "2" and incorporated by reference, and Transcript of the Deposition of Francisco Moreno ("Moreno Depo"), a copy of which is attached hereto as Exhibit "3" and incorporated by reference. In this case, Plaintiffs' primary job function was to keep the common areas at the Association's building clean. *See* Cardenas Depo, pp. 103-105; Moreno Depo, p. 24, lines 22-24. Defendants' Fourth Request for Admission to each Plaintiff asks:

> **Admit that your duties while employed by Aragon Towers Condominium Association primarily involved cleaning and maintenance of the building located at 5249 N.W. 7 Street, Miami, Florida 33126.**

Both Plaintiffs responded:

> **<u>Response to Request No. 4</u>:**
> **Admitted.**

*See* Plaintiff Cardenas' Response to Request for Admission attached hereto as Exhibit "4" and incorporated by reference, and Plaintiff Moreno's Response to Request for Admission attached hereto as Exhibit "5" and incorporated by reference. Plaintiffs also changed light bulbs when necessary. *See* Cardenas Depo p. 85, lines 18-23. Other maintenance work was performed by outside companies. *See* Cardenas Depo p. 85, lines 18-23. Plaintiffs did not themselves purchase supplies for the Association. *See* Cardenas Depo pp. 45-46, lines 22-1 and Moreno Depo pp. 23-24, lines 23-22. The Association provided the Plaintiffs with all their cleaning supplies, purchased at

local stores. *See* Cardenas Depo p. 43, lines 20-25 and Moreno Depo pp. 24, lines 1-10. Plaintiffs themselves acknowledge that they were not involved in the production of goods on behalf of the Association:

> **Q While you worked at Aragon Towers, did you ever make or produce anything for sale?**
> **A No.**
>
> **Q Does Aragon Towers Condominium Association engage in the production of any goods or products for use in commerce, to your knowledge?**
> **A Not that I'm aware of.**
>
> **Q Did you in fact make or produce any goods or products while you worked at Aragon Towers?**
> **A No.**

Moreno Depo p. 32, lines 13-22.

> **Q While you worked at Aragon Towers, did you ever produce anything for sale?**
> **A No.**
>
> **Q Is Aragon Towers Condominium Association engaged in the production of goods or materials for commerce?**
> **A I don't know.**
>
> **Q Were you ever engaged in the making of any goods or products when you worked at Aragon Towers?**
> **A No.**

Cardenas Depo p. 94, lines 2-11.

As the above analysis of the Plaintiffs' duties and the Plaintiffs' statements clearly shows, Plaintiffs were not individually engaged in commerce or engaged in the production of goods for commerce. Thus, the Plaintiffs were not themselves engaged in any activities while working at the

Association which would affect commerce in a substantially sufficient fashion to bring them within the individual coverage provision of the FLSA. *See Lenca*, 388 F.Supp. at 784-785.

**Enterprise Coverage**

Because Plaintiffs cannot prove that they were subject to the individual coverage provision of the FLSA, Plaintiffs must prove that enterprise coverage exists in order to establish that the FLSA applies in this case. In order for enterprise coverage to exist, the enterprise must have (1) employees engaged in commerce or in the production of goods for commerce, or have employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) annual gross volume of sales made or business done is not less than $500,000. 29 U.S.C. § 203(s). "Both prongs must be met." *Sandoval v. Florida Paradise Lawn Maintenance, Inc.*, 2008 WL 5250274, at *3 (11th Cir. 2008).

"An enterprises's total gross volume sales or business done may be determined from its tax returns." *Flores v. Nuvoc, Inc.*, 610 F.Supp.2d 1349 (S.D. Fla. 2008) (citing *Stout v. St. Armour's Lawn Care, LLC*, 2008 WL 816818 at *2 (M.D. Fla. 2005); *Thompson v. Robinson, Inc.*, 2007 WL 2714091, at *4 (M.D. Fla. 2007); *Lopez v. Top Chef Investment, Inc.*, 2007 WL 4247646, at *3 (S.D. Fla. 2008).

In *Lopez v. Top Chef Investment, Inc.* , 2007 WL 4247646, at *3 (S.D. Fla. 2008), the defendant restaurant submitted tax returns and financial statements in support of its motion for summary judgment asserting that no enterprise coverage existed. The court, in finding that no enterprise coverage existed, noted that the returns and statements evidenced that the employer's gross receipts were less than $500,000 for the time at issue. *Id. See also Hernandez v. Nanju Corp.*,

2008 WL 1925263 (S.D. Fla. 2008); *Thompson v. Robinson, Inc.*, 2007 WL 2714091, at *2 (M.D. Fla. 2007) (granting summary judgment and finding no enterprise coverage due to insufficient gross annual receipts).

Assuming, *arguendo*, that the Association has employees engaged in commerce or in the production of goods for commerce, or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, which is not conceded, the Plaintiffs cannot meet the second prong of the enterprise coverage test because the annual gross volume of sales made or business done by the Association is less than $500,000.

For the year 2007, the Association's total gross income, including exempt function income, was $198,009. See line "B" plus line "8" of the Association's income tax return for 2007, attached hereto as Exhibit "6." For the year 2008, the Association's total gross income, including exempt function income, was $282,865. See line "B" plus line "8" of the Association's income tax return for 2008, attached hereto as Exhibit "7." For the year 2009, the Association's total gross income, including exempt function income, was $212,818. See line "B" plus line "8" of the Association's income tax return for 2009, attached hereto as Exhibit "8." Jose O. Garcia, the certified public accountant that prepared the tax returns for the Association for 2007, 2008 and 2009 testified as to the accuracy of the figures in the tax returns. *See* Transcript of the Deposition of Jose O. Garcia, Jr. ("Garcia Depo"), pp. 16-17, lines 22-3, attached hereto as Exhibit "9" and incorporated by reference. Mr. Garcia further testified as to the gross amount taken in by the Association in 2008 and 2009:

> Q. Any of these forms in 2008 and 2009, is there anything indicating on these forms at all that there was an amount of $500,000 or more that was taken in by the condo association

for those years?

A. No, there isn't.

Garcia Depo, p. 16, lines 1-5.

Because the Association did not take in more than $500,000 in gross receipts or business done in either 2007, 2008 or 2009, this Court must find that summary judgment must be granted to the Defendants because the $500,000 FLSA minimum threshold cannot be met in this case.

## CONCLUSION

The Plaintiffs in this case cannot establish that the FLSA applies to them either through individual coverage or enterprise coverage. Accordingly, this Court must grant summary final judgment in favor of the Defendants in this case, and grant any and all further relief deemed proper.

Respectfully submitted,

/s/ Patrick H. Gonyea
Patrick H. Gonyea, Esquire
Florida Bar No. 0055042
pgonyea@florida-law.com
Edwin Cruz, Esquire
Florida Bar No. 0055579
ecruz@florida-law.com

*Eusebia Cardenas, et al. v. Aragon Toweres Condo., et al.*
*Case No. 10-CV-22722 - HUCK/O'SULLIVAN*

## CERTIFICATE OF SERVICE

I hereby certify that on **February 1, 2011**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Patrick H. Gonyea
Patrick H. Gonyea, Esquire
Florida Bar No.: 0055042
pgonyea@florida-law.com
Edwin Cruz, Esquire
Florida Bar No. 0055579
ecruz@florida-law.com

## SERVICE LIST

J. H. Zidell, Esquire
J. H. Zidell, P.A.
300 71st Street, Suite 605
Miami Beach, FL 33141

PHG/EC/dmh
0646/210859